CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/10/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| EVA PALMER,<br><br>                      *Plaintiff,*<br><br>v.<br><br>LIBERTY UNIVERSITY, INC.,<br><br>                      *Defendant.* | Case No. 6:20-cv-31<br><br>MEMORANDUM OPINION<br><br>Judge Norman K. Moon |

       This matter comes before the Court on Defendant Liberty University's second motion for summary judgment, Dkt. 27, regarding Plaintiff Eva Palmer's allegation that Liberty wrongfully terminated her employment in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.*[1] Liberty argues that there is no genuine dispute as to any material fact regarding the merits of Palmer's claim, and that Liberty therefore is entitled to summary judgment.

       Palmer was a long-time studio art professor at Liberty, up until Liberty chose not to renew her contract at the end of the 2017–2018 school year. She claims that Liberty did not renew her contract because of her age (79 at the time). In turn, Liberty argues that it did not renew Palmer's contract because she was unable to teach classes in digital art or to teach classes on Liberty's online platform, two areas that had seen a significant increase in student demand in the years leading up to Palmer's termination.

---

[1] The Court previously denied Liberty's first motion for summary judgment on the issue of the ministerial exception, Dkt. 13, and found instead in Plaintiff Eva Palmer's favor on the same issue, Dkt. 14, 35.

The Court must consider up to four legal issues: (1) whether Palmer has established direct evidence of age discrimination; (2) if she has not established direct evidence, whether she has established sufficient indirect evidence to make out a *prima facie* employment discrimination case under the analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); (3) if she has made out a *prima facie* case, whether Liberty has proffered a legitimate nondiscriminatory reason for not renewing her contract; and (4) if Liberty has proffered a legitimate nondiscriminatory reason, whether that reason is merely a pretext for age-based discrimination.

The Court will grant Liberty's motion. There is no genuine dispute of material fact with respect to two issues. First is whether Palmer was meeting Liberty's legitimate expectations at the time of her termination, which is an element of her *prima facie* case. Second is whether Liberty's proffered nondiscriminatory reason for terminating Palmer was merely pretext for age-based discrimination.

## I.   FACTS

### A.  Introduction

Eva Palmer taught art classes at Liberty University from 1986 to 2018, when it chose not to renew her contract for the following academic year.[2] Ex. F to Dkt. 31 at ¶ 6. Palmer mostly taught studio art—painting, drawing, and ceramics, for instance. *Id.* at ¶ 22. Over the course of her years at Liberty, she progressed from "Art Instructor" to "full Professor," with several position titles in between. *Id.* at ¶¶ 10–12. When Liberty hired her, she was 47. *Id.* at ¶ 8. When Liberty fired her, she was 79. *Id.*

Liberty claims that it fired Palmer because she was unable to teach courses in digital art

---

[2] The Court construes the evidence in the light most favorable to Palmer, the nonmoving party. *See Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

or on Liberty's online platform. Palmer claims that Liberty fired her because of her age.

### B. Lead-up to Non-Renewal

After many years of teaching at Liberty, Palmer applied for a full Professorship in 2013. Ex. 1 to Dkt. 28 at ¶ 19. After two failed attempts at receiving the promotion, she worked with her supervisors, including Mr. Todd Smith and Dr. Scott Hayes, to develop a "Professional Development Plan" that laid out Liberty's expectations that she would have to meet to receive the promotion. *Id.* at ¶¶ 21–22; Ex. F to Ex. 1 to Dkt. 28. The Professional Development Plan required her to improve her teaching effectiveness, to increase her productivity in scholarship, and, in a section titled "Regarding Technology," to develop a digital skillset. Ex. G to Ex. 1 to Dkt. 28. Administrators in Palmer's department wanted to increase their course offerings in the digital arts—courses using tools like the Adobe Suite—because of increased student demand for those courses, which tracked increased job market demand for the skills taught in them. Ex. 1 to Dkt. 28 at ¶ 11.

Palmer did not understand the Professional Development Plan as disciplinary, but instead "entirely for the purposes of promotion." Dkt. 31 at 12.

Palmer then made some efforts towards meeting the goals laid out in the Professional Development Plan. Most notably, she increased her scholarship productivity, and presented artwork at several conferences. Ex. 1 to Dkt. 28 at ¶ 24; Ex. 2 to Dkt. 28 at 120–30. Eventually, Liberty promoted her to "full" Professor in 2016. Ex. 1 to Dkt. 28 at ¶ 24; Ex. H to Ex. 1 to Dkt. 28.

Around the same time that Palmer was seeking a promotion to full Professor, her supervisors requested in a series of annual evaluations that she improve her technological skills. Ex. 1 to Dkt. 28 at ¶¶ 13–14, 22; Ex. C to Ex. 1 to Dkt. 28. Her supervisors had two specific

requests. First, they wanted her to be able to teach courses in digital art. Ex. 1 to Dkt. 28 at ¶ 14. Second, they wanted her to better incorporate technology into the courses she already taught (e.g., by using software like Blackboard and PowerPoint). Ex. 1 to Dkt. 28 at ¶¶ 14, 23; Ex. G to Dkt. 28. In 2013, Mr. Smith recommended that Palmer take technology courses through Liberty's Center for Teaching Excellence. Ex. 1 to Dkt. 28 at ¶ 22; Ex. F to Ex. 1 to Dkt. 28. Palmer agreed that she needed to develop better technological skills. Ex. 2 to Dkt. 28 at 99, 194–195. In 2014, she wrote that "it is important to understand technology, especially related to art and animation, so I plan to continue to seek technology instruction." Ex. E to Ex. 1 to Dkt. 28. She wrote a similar comment in 2015. *Id.* Although Palmer agreed with her supervisors' general sentiment that she needed to develop better digital skills, she did not understand their requests as mandates on which her job was contingent. Ex. 2 to Dkt. 28 at 70–72, 150–51. She saw them as merely "goals for improvement." *Id.* at 131–32, 274–75.

Palmer never developed technological skills to Liberty's satisfaction. Ex. 1 to Dkt. 28 at ¶¶ 16–17, 23, 37. She took two courses on digital art and design. *Id.* at ¶ 16. The first was a 1.5-hour class on Adobe InDesign. Ex. D to Ex. 1 to Dkt. 28. The second was titled "Exploring New Worlds of Virtual & Augmented Reality." Ex. 1 to Dkt. 28 at ¶ 16. Liberty believed these courses to be insufficient to qualify Palmer to teach digital art, especially because most of Liberty's faculty members who teach digital art begin their employment at the school with backgrounds in the industry. *Id.* at ¶¶ 16–17.

### C. The Non-Renewal

In fall 2017, Liberty decided not to renew Palmer's contract for the following academic year. Ex. 1 to Dkt. 28 at ¶ 26. Palmer's position was not tenured. Dkt. 28 at 21. Liberty grants employment contracts on a one-year basis, finishing at the end of each spring semester. Ex. 1 to

Dkt. 28 at ¶ 25. Each fall, the Deans of each school inform the Provost's Office which faculty they recommend not bringing back for the following year. Ex. 1 to Dkt. 28 at ¶ 25. So, in November 2017, Dr. Hayes, with input from Mr. Smith, informed the Provost's Office that he recommended not renewing Palmer's contract. *Id.*

Dr. Hayes gave two reasons to the Provost's Office. First, Palmer was not qualified to teach digital art, for which Liberty was struggling to meet student demands. Second, she had not demonstrated a sufficient ability to teach classes on Liberty's online platform ("Liberty University Online"), which was also seeing an increase in student demand. *Id.* at ¶ 27; Ex. I to Ex. 1 to Dkt. 28. As of that time, Palmer was the only faculty member in the Studio & Digital Arts Department who had not taught a class that required digital literacy; she was also the only member of the department who had not taught a class on Liberty University Online. Ex. 1 to Dkt. 28 at ¶ 27.

In a letter to the Provost's Office, Dr. Hayes explained:

> As the [Department of Studio & Digital Arts (SADA)] curriculum continues to expand in the digital area, the department needs faculty who possess cross-over skills in digital and studio art. Eva Palmer's skill set lies only in the studio art area. Because we're struggling to have enough courses in this area to fill a number of schedules, it is presently difficult to make load for faculty who have only studio skills. We also have [Graduate Student Assistants (GSAs)] who are qualified to teach lower level studio art courses with professors of record.
>
> . . .
>
> At this time, Department Chair Todd Smith is requesting a replacement position for Eva Palmer to begin 2018-19. As the SADA department continues to refine its curricular offerings, the need for professors with cross-over skills in studio and digital art. At present, Eva Palmer's contract load is made up of mostly lower level studio art courses, where her skill set is, and SADA GSAs can teach with professors of record, it is difficult to fill her schedule. Also, a number of other SADA faculty have the cross-over skills needed and can teach these courses when needed. Our biggest demand right now for lower level courses is in the digital area, so she isn't able to help us with these courses.

> Smith has recommended for several years that Eva Palmer gain further skills with digital design software. To date, this hasn't happened. . . . [W]e need cross-over SADA faculty who are effective in the areas of teaching and communication. The goal is to implement the Dean's vision for reaching the culture through the arts by training the next generation of artists to impact these fields.

Ex. J to Ex. 1 to Dkt. 28. Dr. Hayes explains the apparent discrepancy between his recommendation that Palmer be promoted to full Professor a year prior and his recommendation that she now be terminated: although Palmer had, in fact, increased her scholarship productivity, which had been the main barrier to her promotion, "that scholarship has not resulted in improving the range of content that Professor Palmer can teach." Ex. 1 to Dkt. 28 at ¶ 30–31. Dr. Hayes attests that at the time of Palmer's promotion, he had not anticipated that demand for courses in digital art would so far outstrip demand for courses in studio art, but, by the end of 2017, "it was clear that the Digital Arts interest was increasing on both Liberty's residential and online platforms, and that Studio Arts interest, residentially, was actually decreasing." *Id.* at ¶ 31.

After deciding that they would end Palmer's employment with Liberty, Dr. Hayes and Mr. Smith briefly discussed how, exactly, they would do so. They discussed the possibility that Palmer would retire instead of being outright terminated. Ex. D, F, T to Dkt. 31. Smith sent Hayes a document in which he listed Palmer as "Retiring," not as a "Non-Renewal." Ex. D to Dkt. 31. The guidelines for completing the document say that the word "Retiring" indicates that the employee would be retiring at the end of the school year. *Id.* Palmer, however, never indicated a desire to retire to Hayes, Smith, or anyone else at Liberty. Dkt. 31 at 15. Later, in other paperwork, Dr. Hicks, another administrator, noted that Liberty should "consider transition to retirement" for Palmer. Ex. T to Dkt. 31. Hicks attests that he wrote those words because he had considered offering Palmer the opportunity to retire and teach part time in the following school year (rather than being outright terminated) if she brought up retirement in response to the

6

notice of non-renewal. Ex. T1 to Dkt. 31. But Palmer never brought up retirement, so Liberty never offered her the chance. Ex. F to Dkt. 31 at ¶ 17.

After Liberty's decision to terminate Palmer's employment, Hicks communicated with Hayes about the possibility of giving Palmer a year's notice to improve her teaching ability. Ex. U to Dkt. 31. In response, Hayes wrote that he did not think that option was appropriate, because Palmer would "have great difficulty with any changes, and this would most likely exacerbate negative student experiences." *Id.* Then, Liberty finalized the non-renewal by notifying Palmer in April 2018 that she would not be offered a contract for the 2018–2019 academic year. Ex. 1 to Dkt. 28 at ¶ 34.

After Liberty terminated Palmer, the school hired several new art instructors. Liberty posted a job listing for an instructor who had "some experience in studio art" along with "expertise in one of the following: graphic design, animation, motion graphics, UI/UX design, responsive web design, and game design with some experience in studio art." Ex. L to Ex. 1 to Dkt. 28. Liberty sought a candidate who had "experience with online teaching environment." *Id.* Between fall 2019 and spring 2020, Liberty hired four new graphic design faculty members. Ex. 1 to Dkt. 28 at ¶ 36. One of these new faculty members was assigned the same "position number" as Palmer. *Id.* All the new hires began at Liberty with a background teaching graphic design and/or working in the industry. *Id.* at ¶¶ 38–39.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is

material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must "show that there is a genuine dispute of material fact . . . by offering sufficient proof in the form of admissible evidence." *Id*. (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id*. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant. *Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert City*, 48 F.3d 810, 818 (4th Cir. 1995).

### B. ADEA

Under the ADEA, and employer may not "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff can prove a violation of the ADEA through direct or circumstantial evidence. *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019). At the summary

judgment stage, a plaintiff alleging an ADEA violation can establish a dispute of material fact through circumstantial evidence using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The *McDonnell Douglas* framework follows three steps: "(1) the plaintiff must establish a *prima facie* case of discrimination or retaliation; (2) if the plaintiff presents *a prima facie* case, then the burden shifts to the defendant to show a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action; and (3) if the defendant shows such a reason, then the burden shifts to the plaintiff to prove that the reason is pretextual." *Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 229 (4th Cir. 2018) (per curiam) (citing *McDonnell Douglas*, 411 U.S. at 802–04; *Guessous*, 28 F.3d at 216). At the final stage, "[t]he employee must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant-employer were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### III. DISCUSSION

#### A. Has Palmer Established Direct Evidence of Age Discrimination?

The first issue is whether Palmer has established direct evidence of age discrimination sufficient to overcome a summary judgment motion. Palmer argues that she has provided direct evidence of age discrimination; Liberty argues that she has not. If she has proffered direct evidence of age discrimination, the rest of the analysis is beside the point; direct evidence on its own can suffice to prove a claim. *Trans World Airlines Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").

Palmer has not proffered direct evidence of age discrimination. Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude

and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006). "Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action." *Id.*; *see also Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) (holding that plaintiff "must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action").

Palmer argues that two pieces of evidence constitute direct evidence of age discrimination. First, she points to statements from Liberty officials relating to her potential retirement. Dkt. 31 at 23. She notes that before Liberty decided not to renew her contract, one university administrator (Smith) sent another (Hayes) a document that stated that Palmer would be "Retiring" at the end of the school year, when another option on the document was "Non-Renewal." *Id.* at 15 (quoting Ex. D to Dkt. 31). Palmer never indicated to any administrator that she intended to retire. *Id.* This document, Palmer argues, "clearly indicates that Smith (and then Hayes) were taking Palmer's age into account when trying to slot her for a 'retirement' position, rather than a straight-up non-renewal." *Id.*

Palmer argues that this line of "improper thinking" regarding her employment continued through Liberty's decision not to renew her contract. She notes that in the final paperwork distributed to her during her non-renewal, Liberty stated it would "consider transition to retirement" for her. *Id.* (quoting Ex. T to Dkt. 31). In a deposition, Dr. Hicks, the administrator who authored the form, said that he included the "retirement" language because Liberty had decided that it might offer Palmer the opportunity to take a form of semi-retirement and teach a lower course load if she brought up the issue of retirement in response to her non-renewal. Ex. T1 to Dkt. 31 at 16–23.

While forced retirements are often impermissible under the ADEA, this is not a case of forced retirement. *See, e.g.*, *Blistein v. St. John's College*, 74 F.3d 1459, 1468 (4th Cir. 1996) (citing different circuits' cases on forced retirement), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998). While Liberty may have considered offering Palmer the opportunity to retire, as Palmer freely admits, Liberty never actually presented the opportunity to her. And further, the undisputed evidence shows that Liberty only contemplated offering Palmer the opportunity to retire *after* already deciding that it would terminate her for not developing digital skills. Nowhere in the record is there evidence that retirement was considered for Palmer earlier in Liberty's decision-making process, much less forced retirement. And further still, Palmer cites no authority for the proposition that merely contemplating offering an employee the opportunity to retire instead of terminating them for performance-based reasons constitutes direct evidence of age-based discrimination. In fact, other courts have held that similar circumstances have not constituted direct evidence of discrimination. *See, e.g.*, *Harris v. Powhatan Bd. of Supervisors*, 2021 WL 2673045 at *4 n.8 (E.D. Va. June 29, 2021) (noting the Court's "serious doubts" that a single suggestion that the plaintiff retire "constitutes direct evidence of age discrimination"); *Stephens v. Gutierrez*, 2010 WL 1005189 at *4 (E.D. Va. Mar. 15, 2010) ("[R]etirement is not synonymous with age."). The Court holds that Liberty considering offering Palmer the opportunity to retire, but not acting on that consideration, after already having decided to fire her for performance-based reasons, does not constitute direct evidence of age discrimination.

Palmer also argues that Liberty's statements about her being incapable of or resistant to "change" are direct evidence of discrimination. Dkt. 31 at 23. Palmer asserts that these comments relate solely to her age, such that Liberty adopted an "old dog new tricks mentality."

11

*Id.* at 16. But Palmer provides no evidence that Liberty believed Palmer was resistant to change solely, or even partially, because of her age. Rather, the evidence shows that Liberty believed that Palmer was resistant to change because of her demonstrated failure to develop digital skills after her supervisors repeatedly advised her to do so. *See* Ex. 1 to Dkt. 28 at 26–34. And while the Court is required to "view[] all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party," *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018), no such "reasonable" inference can be drawn here because nothing in those statements indicates that Liberty thought Palmer was resistant to change because of her age. Rather, Palmer's argument in this regard relies on conjecture and speculation, which are insufficient to defeat a motion for summary judgment. *See Baber v. Hosp. Corp. of. Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). Thus, the evidence regarding Palmer's resistance to change does not "clearly indicate[] a discriminatory attitude." *See Brinkley*, 180 F.3d at 608.

      Even if the administrators' comments do reflect age-based discrimination, Palmer still must show by a preponderance of the evidence that her age was the but-for cause of her contract's non-renewal. *See Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177–78 (2009); *Westmoreland*, 924 F.3d at 725. "[I]f there existed other legitimate motivations for the decision, the employee must offer sufficient evidence to show that these factors were not 'the reason' for the employer's decision." *Arthur v. Pet Dairy*, 593 F. App'x 211, 220 (4th Cir. 2015) (quoting *Gross*, 557 U.S. at 176); *see also Westmoreland*, 924 F.3d at 725 (An "employee must prove that the employer would not have fired her in the absence of age discrimination," not merely that "age was one of multiple motives" for the decision.). It follows that "direct evidence of age discrimination may not always be sufficient to create a question of fact for trial in the ADEA context." *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 532 (6th Cir. 2014).

Even if the Court were to accept that Palmer's evidence constitutes direct evidence of discrimination—and the Court has concluded it does not—still, such evidence does not produce a genuine issue of material fact that Palmer's age was the but-for cause of Liberty's decision not to renew her contract. Liberty's evidence about terminating Palmer for being unable to teach digital arts courses is a "legitimate motivation[]" and Palmer has not offered sufficient evidence to show that Liberty's stated reason was not "the reason" for her termination. *See Arthur*, 593 F.3d at 220. Accordingly, Palmer's claim separately cannot succeed under a direct evidence of discrimination framework for this reason as well.

    B. <u>If Palmer Has Not Established Direct Evidence, Has She Established a *Prima Facie* Case under the *McDonnell Douglas* Factors?</u>

Because Palmer has not provided direct evidence of age discrimination, she must provide circumstantial evidence "of sufficient probative force to reflect a genuine issue of material fact." *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988). "A plaintiff does not need a 'smoking gun' to prove invidious intent, and few plaintiffs will have one. Rather, circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 299–300 (4th Cir. 2010).

The analysis for whether Palmer has provided sufficient circumstantial evidence to overcome a summary judgment motion is set forth in *McDonnell Douglas*, 411 U.S. at 807. The first part of the *McDonnell Douglas* analysis is that Palmer must make out a *prima facie* case of age discrimination. *Id.* To make out a *prima facie* case under the ADEA, Palmer must show that she (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting her employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside the protected class

13

or someone "substantially younger." *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311–13 (1996) (applying the *McDonnell Douglas* framework to an ADEA claim). Here, the first two elements are clearly met; the latter two are contested.

The first contested element (and third overall) of the *prima facie* case is whether Palmer was meeting Liberty's expectations at the time Liberty decided not to renew her contract. *See Ruff v. Target Store, Inc.*, 226 F. App'x 294, 301–04 (4th Cir. 2007) (discussing the employer's expectations prong at length). Palmer argues that she was meeting Liberty's expectations because it had recently promoted her to full Professor. Dkt. 31 at 16–17. By contrast, Liberty argues that she was not meeting expectations primarily because she was unable to teach digital art or to integrate digital tools into her classes. Dkt. 28 at 16–20. Indeed, Liberty has put forward substantial evidence documenting repeated attempts to prompt Palmer to develop a digital art skillset. Ex. 1 to Dkt. 28 at ¶¶ 13–14, 21–24. It is further undisputed that Palmer never developed that skillset. *Id.* at ¶¶ 19–24; Dkt. 31 at 11–14. To be sure, Palmer has noted that she was not aware of the full extent of Liberty's dissatisfaction with her performance, and she may have even believed she was meeting Liberty's expectations, notwithstanding her failure to develop a digital art skillset. Dkt. 31 at 17. But that is irrelevant to the ADEA analysis because "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). Palmer has not proffered evidence sufficient to create a genuine issue of material fact that she was meeting Liberty's expectations at the time of her termination.

The second contested element (and fourth overall) of the *prima facie* case is whether Palmer was replaced by or treated less favorably than someone outside the protected class or someone substantially younger. Palmer proffers that Liberty replaced her with a younger

instructor. Dkt. 31 at 22 (citing Ex. X, Y, Z, AA to Dkt. 31). Liberty argues that it did not "replace" Palmer because the instructors it hired in her place possessed substantially different skillsets, namely in the digital arts. Dkt. 28 at 12–13 (citing Ex. 1 to Dkt. 28 at ¶¶ 35–39). Given that all this prong requires is that the defendant hired a new employee outside the protected class or substantially younger than the plaintiff with no consideration of the defendant's *reason* for doing so, Palmer has satisfied it. *See O'Connor*, 517 U.S. at 312–13 (discussing replacement element); *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000) (same).

In short, Palmer has satisfied the first, second, and fourth elements, but not the third element, of her *prima facie* case. Because she has failed to make out the third element, she has not provided sufficient evidence to overcome a motion for summary judgment. But the Court will nonetheless explain why it would grant Liberty's motion even if Palmer had made out her *prima facie* case.

C. If Palmer Has Made out a *Prima Facie* Case Under *McDonnell Douglas*, Has Liberty Articulated a Legitimate Nondiscriminatory Reason for the Non-Renewal?

Once the plaintiff has established a *prima facie* case of age discrimination, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its employment decision. *O'Connor*, 517 U.S. at 311. The employer does not have to prove its nondiscriminatory reason; it is "sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254. Liberty argues that its legitimate nondiscriminatory reason was Palmer's failure to develop a digital skillset. Dkt. 28 at 16. Liberty proffers substantial evidence supporting this reason, discussed above.

Liberty has satisfied its burden to articulate a legitimate, non-discriminatory reason for not renewing Palmer's contract.

15

D.  Is Liberty's Proffered Reason for the Non-Renewal Merely Pretext?

The final step of the analysis is whether Palmer has established a genuine dispute about whether Liberty's stated reason for not renewing her contract is merely a pretext for age-based discrimination. *McDonnell Douglas*, 411 U.S. at 804.

Palmer's arguments on this point are brief. She argues that Liberty never made her continued employment expressly contingent on developing a digital skillset, which she believes evinces a pretextual motive for firing her. *See* Dkt. 31 at 2. But this misunderstands the law—Liberty was not required to make some explicit warning to Palmer that she had to develop a digital skillset to maintain her employment. It is beside the point whether Palmer believed she was performing her duties well, because the employer's assessment is what matters. *Hawkins*, 203 F.3d at 280.

Palmer further argues that the fact that she was promoted two years before her termination evinces pretext. Dkt. 31 at 25. Liberty argues the opposite—that her recent promotion cuts against inferring that her termination was motivated by her age. Dkt. 34 at 5. Indeed, where the same individual who hired the employee also fires the employee within a relatively short period of time, "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797–98 (4th Cir. 1991); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (noting that because the same individual hired and fired the employee, an inference arose that the decision was not motivated by discriminatory animus toward the employee because of the employee's age). The same can be said for when an individual recommends an employee for promotion and later recommends them for non-renewal. *See Huckelba v. Deering*, 2016 WL 6082032, at *4 (E.D.N.C. Oct. 17, 2016) ("An employer who knowingly promotes a worker who

engaged in protected activity seldom will be a credible target for charges of pretextual firing.") (internal citations omitted). Here, the same individual who recommended that Liberty promote Palmer to full Professor, Dr. Hayes, recommended that Liberty not renew her contract one year later. Ex. I, J to Dkt. 31; Ex. 1 to Dkt. 28 at ¶ 26–29. Thus, there is a "strong inference that discrimination was not a determining factor" in Palmer's termination. *Proud*, 945 F.2d at 797–98.

Palmer has not proffered evidence sufficient to overcome that inference and create a genuine dispute that Liberty's articulated reason for not renewing her contract was a pretext for age-based discrimination. None of Palmer's evidence puts into dispute Liberty's stated reason for terminating her: that she was unable to teach digital arts courses. At most, Palmer could point to the administrators' communications about potentially allowing her to retire if she asked to be allowed to do so. But to hold that those communications create a genuine dispute that Liberty's articulated reason is pretextual would be to rely on "mere speculation, the building of one inference upon another, . . . [and] the mere existence of a scintilla of evidence." *Dash*, 731 F.3d at 311. It would take a substantial and unwarranted logical leap from the fact that, after Liberty decided to terminate Palmer, Liberty considered allowing Palmer to retire instead of being terminated (but did not actually present that option to Palmer), for the Court to infer from such evidence that Liberty terminated her because of her age. Without more, those circumstances do not establish a genuine dispute about whether Liberty's stated reason for terminating Palmer was pretextual.

Palmer relies heavily on the Fourth Circuit's decision in *Westmoreland v. TWC Administration LLC*, 924 F.3d 718 (4th Cir. 2019), but the posture and underlying facts of that case are entirely different from her own. In *Westmoreland*, the case went to trial, the district

17

court denied the defendant's motion for judgment as a matter of law, and the jury returned a verdict for the plaintiff. *Id.* at 722. The defendant then appealed the district court's ruling on the motion for judgment as a matter of law. *Id.* The Fourth Circuit held that the plaintiff had presented sufficient evidence to support the jury's finding that the defendant-employer's proffered reason for firing the plaintiff was pretextual. *Id.* at 730. The defendant's proffered reason was that the plaintiff had committed a single disciplinary infraction—which a supervisor told her not to worry about—after many years of discipline-free employment. *Id.* at 726. At trial, the plaintiff presented evidence that she had been terminated after 30 years of consistently satisfactory work, and, of particular importance, that the individual who terminated her made an age-related mark *immediately after* terminating her (as the supervisor was walking the plaintiff to her car, the supervisor remarked: "Just go home and take care of those grandbabies."). *Id.* at 724, 726–29. Palmer has not proffered evidence that any administrator at Liberty made any similar age-related comment to her, let alone made one contemporaneously with her termination. Nor has she cited a more apposite case.

As a final note, even if Palmer could proffer circumstantial evidence that age was a consideration in Liberty's decision not to renew her contract, she would still have to show that age was the but-for cause. "[T]he ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross*, 557 U.S. at 173. Rather, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Id.* at 177. As discussed above in Part III.A with respect to Palmer's proffered "direct evidence," even if the Court were to hold that the administrators' comments about her potentially retiring evinced that age played some role in her termination, the Court could not hold that it was the but-for cause.

18

In sum, Palmer has not produced evidence sufficient to create a genuine dispute about whether Liberty's articulated reason for not renewing her contract was a pretext for age-based discrimination.

## IV.  CONCLUSION

For the reasons discussed above, the Court will grant Liberty's second summary judgment motion, Dkt. 27. A corresponding order will accompany this opinion.

The Clerk of Court is directed to send this memorandum opinion to all counsel of record.

ENTERED this 10th day of December 2021.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE